United States District Court
For the Northern District of California

1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
8
9                                    )  Case No. C 13-1537 SC
                                     )
10   IBiz, LLC,                      )  ORDER GRANTING IN PART AND
                                     )  DENYING IN PART PLAINTIFF'S
11              Plaintiff,           )  MOTION FOR PRELIMINARY
                                     )  INJUNCTION
12        v.                         )
                                     )
13   City of Hayward,                )
                                     )
14              Defendant.           )
     _____)
15
16
17   I.   **INTRODUCTION**
18        Now before the Court is Plaintiff IBiz, LLC's ("Plaintiff")
19   motion for a preliminary injunction against Defendant City of
20   Hayward ("Defendant" or "City").  ECF No. 19 ("Mot.").  The case is
21   related to No. 13-1212 (the "Net Connection Case"), and the parties
22   often incorporate documents from that case into their papers.  ECF
23   Nos. 20 ("Opp'n"), 32 ("Reply").  Concurrently with this Order, the
24   Court issued an order denying Net Connection's motion for a
25   preliminary injunction in the Net Connection Case.  Net Connection
26   Case, ECF No. 54 ("Net Connection Order").  The Court incorporates
27   its findings from the Net Connection Order into this one.
28        The parties also agreed to have this motion determined without

oral argument,[1] and the Court finds that decision appropriate per

Civil Local Rule 7-1(b).  For the reasons explained in this Order,

the Court GRANTS Plaintiff's motion for a preliminary injunction

and enters an injunction, detailed below.

## II.   BACKGROUND

The following facts are taken from the parties' briefs and

accompanying declarations and requests for judicial notice, which

the Court grants under Federal Rule of Evidence 201.  The parties

also incorporate some facts from the Net Connection Case, and since

the two cases are so similar, the Court often refers to its Order

discussing that case's more extensive record.

Plaintiff describes itself as an Internet café and business

center, located in downtown Hayward.  Mot. at 3-4.  (The Court

refers to Plaintiff's physical location as "IBiz Hayward").  Its

business is very much like Net Connection's: it sells computer

rental time, which includes Internet access and an array of

computer-based programs and services.  See Net Connection Order at

2-3.  Also like Net Connection, Plaintiff uses a promotional

sweepstakes program to promote its services.  Mot. at 4-5; Net

Connection Order at 3-4.

While Plaintiff does not fully describe the process through

which it obtained a business license from Defendant, the parties

agree that Plaintiff somehow obtained one and that the situation is

almost identical to Net Connection's.  See Mot. at 7-8; Opp'n at

19-21; Net Connection Order at 5-7.  In other words, Plaintiff

---

[1] The Court did hold a two-day hearing on the preliminary
injunction in the Net Connection Case.

2

applied for and obtained a license through the usual channels, as
Net Connection did, and the Court presumes that this means
Plaintiff's business license was also approved from a land use
perspective.  See Net Connection Order at 5-7, 18-20.

Plaintiff is located in Hayward and is therefore subject to
the same zoning laws and regulations as Net Connection.  Its case
is therefore based on two ordinances that Defendant enacted between
February and April 2013.  The first is Ordinance No. 13-03, which
was an interim urgency ordinance adopted on February 20, 2013 under
California Government Code section 65858.  See Net Connection Order
at 10.  The second is Ordinance No. 13-05, which is an extension of
Ordinance No. 13-03 that the City Council unanimously adopted on
April 2, 2013 after providing notice on March 22 and a hearing on
April 2.  ECF No. 18 ("Pl.'s RJN") Ex. 2 ("Ordinance No. 13-05");
see also Net Connection Order at 10-12.[2]

Ordinance No. 13-05, the extended Ordinance and the operative
law at this point, has several relevant parts.  First, Ordinance
No. 13-05 defines "Computer Gaming and Internet Access Businesses"
as follows:

> . . . [A]n establishment that provides one
> or more computers or other electronic
> devices for access to the World Wide Web,
> Internet, e-mail, video games or computer
> software programs that operate alone or
> networked (via LAN, WAN, wireless access or
> otherwise) or that function as a
> client/server program, and which seeks
> compensation or reimbursement, in any form,
> from users.  "Computer Gaming and Internet
> Access Business" shall also be synonymous
> with a personal computer ("PC") café,

_____

[2] The parties often refer to the two Ordinances, Nos. 13-03 and 13-
05, collectively.  The Court occasionally does the same, though the
operative Ordinance here is Ordinance No. 13-05, and the Court
cites that Ordinance specifically when it is important to do so.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1          Internet café, cyber café, sweepstakes
     gaming facilities, business center, Internet
2    sales business and Internet center with
     Internet sweepstakes-type games . . . .
3

4    Ordinance No. 13-05 at 5.

5        The moratorium's scope, as to Computer Gaming and Internet

6    Access Businesses, is set out here:

7          . . . [F]rom and after the effective date of
     this Ordinance, no permit or any other
8    applicable license or entitlement for use,
     including but not limited to, the issuance
9    of a business license, business permit,
     building permit, use permit or zoning text
10   amendment shall be approved or issued for
     the establishment or operation of Computer
11   Gaming and Internet Access Businesses in the
     City of Hayward. Additionally, Computer
12   Gaming and Internet Access Businesses are
     hereby expressly prohibited in all areas and
13   zoning districts in the City.

14   Id.

15       Ordinance No. 13-05 also declares Computer Gaming and Internet

16   Access Businesses to be nuisances:

17
           The establishment, maintenance or operation
18   of a Computer Gaming and Internet Access
     Business as defined herein with[in] the City
19   limits of the City of Hayward is a public
     nuisance. Violations of this Ordinance may
20   be enforced by any applicable law, including
     but not limited to injunctions,
21   administrative citations or criminal
     penalties.
22

23   Id. at 6.

24       On April 5, 2013, shortly after the Court entered a temporary

25   restraining order for Net Connection, Net Connection Case ECF No.

26   13, Plaintiff sued Defendant, and one week later it amended its

27   complaint. ECF Nos. 1 ("Compl"), 5 ("FAC"). The Court related

28   this case to the Net Connection Case on April 15, 2013, and on May

7, 2013, Plaintiff moved for a preliminary injunction.

In Plaintiff's FAC, it asserts nine causes of action against Defendant:

> (1)  violation of procedural due process;
> (2)  violation of substantive due process;
> (3)  violation of equal protection based on the Ordinance;
> (4)  violation of equal protection based on allegedly discriminatory enforcement of the California lottery statute, Cal. Pen. Code § 319;
> (5)  a facial challenge to Ordinance No. 13-03 based on an alleged violation of the First Amendment and the California Constitution's free speech provisions;
> (6)  injunctive relief prohibiting Defendant's enforcement of California's slot machine and lottery statutes, Cal. Pen. Code §§ 330a, 330b, 330.1 (slot machine statutes), 319 (lottery statute);
> (7)  in the alternative, injunctive relief prohibiting threatened ex parte mass seizures of Plaintiff's computers;
> (8)  declaratory judgments that Plaintiff's operation of business is permissible or a legal nonconforming use, and that its sweepstakes software is legal and permissible under California law; and
> (9)  petition for a writ of mandate and stay.

Compl. ¶¶ 37-125.

III.  **LEGAL STANDARD**

A plaintiff seeking a preliminary injunction must establish (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm absent preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest.  Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008).

The Ninth Circuit has formulated a version of the preliminary

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  injunction test in which "serious questions going to the merits"

2  and a balance of hardships tipping toward the plaintiff can support

3  the issuance of a preliminary injunction, so long as there is a

4  likelihood of irreparable injury and the injunction is in the

5  public interest (that is, so long as the plaintiff makes a showing

6  on all four prongs of the <u>Winter</u> test).  <u>See</u> <u>Alliance for the Wild</u>

7  <u>Rockies v. Cottrell</u>, 632 F.3d 1127, 1131-33 (9th Cir. 2011).  In

8  other words, under this formulation, a stronger showing under one

9  factor could offset a weaker showing for another, but a plaintiff

10 must still satisfy every <u>Winter</u> factor.  <u>Id.</u> at 1135.

11

12 **IV.  <u>DISCUSSION</u>**

13     **A.  <u>Claims 1-4, 8, and 9</u>**

14     Plaintiff's Claims 1-4, 6, 8, and 9 are virtually identical to

15 the claims at issue in the Net Connection Case.  The Court will not

16 restate what it explained at length in the Net Connection Order,

17 because the Court finds no material differences in the facts or law

18 that the parties discuss in this case.

19     The Court adopts its findings and reasoning from the Net

20 Connection Order and finds that Plaintiff has failed to show a

21 likelihood of success on Claims 1-4, 8, or 9 in its FAC, since, in

22 summary, (1) Defendant did not act ultra vires, arbitrarily, or

23 unreasonably in enacting the Ordinances or declaring Defendant's

24 business a nuisance; (2) Defendant did not deny Plaintiff

25 procedural due process; (3) Defendant did not violate Plaintiff's

26 right to equal protection; and (4) the Court need not address any

27 of Plaintiff's arguments about the California lottery or slot

28 machine statutes, since a decision on those issues would not

resolve any actual controversies and would result in the Court making an impermissible advisory ruling and deciding unnecessary issues of state law. See Net Connection Order at 15-33.

**B.   Claims 5-7**

Plaintiff's Claims 5, 6, and 7 are not addressed in the Net Connection Order. Claim 5 is a First Amendment challenge to the Ordinance. Claims 6 and 7 request that the Court enjoin certain types of ex parte or summary mass seizures of computers from Plaintiff.

**i.   Plaintiff's First Amendment Claim**

Plaintiff alleges that the Ordinance is facially invalid because it violates the First Amendment and California Constitution Article 1, section 2(a). FAC ¶¶ 72-80. Plaintiff argues that the Ordinance imposes an overbroad prohibition on any establishments that provide, in exchange for any form of consideration, Internet access via any type of computer or electronic device. Plaintiff contends that such a ban is as patently unconstitutional as a ban on a bookstore or library, since providing access to the Internet is an expressive activity related to the provision of communication services and information. Mot. at 18-19. Plaintiff seeks to assert its own First Amendment rights as well as those of parties not before the Court, including other business owners and customers. Id.

The Court must determine whether Plaintiff is able to bring a facial challenge to the Ordinances before it can decide whether the Ordinances violate the First Amendment. Courts are ordinarily reluctant to entertain facial challenges to laws because of the risks involved with potentially adjudicating the rights of parties

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

not before the court.  Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503 (1985).  However, this reluctance is somewhat diminished in the First Amendment context because of the concern that "those who desire to engage in legally protected expression . . . may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid."  Id.; see also, e.g., Massachusetts v. Oakes, 491 U.S. 576, 381 (1989); Roulette v. City of Seattle, 97 F.3d 300, 303 (9th Cir. 1996); cf. Broadrick v. Oklahoma, 413 U.S. 601, 612-13 (1973)) (holding that facial challenges were narrowly permissible when the challenged laws sought to regulate spoken words or expressive or communicative conduct).  This exception to the general rule that a litigant only has standing to vindicate his own constitutional rights is called the overbreadth doctrine.  Members of the City Council of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 796-99 (1984).

Out of concern for the risk that the overbreadth doctrine might allow a standing exception to swallow the general rule, the Supreme Court has directed courts to weigh "the likelihood that the statute's very existence will inhibit free expression."  Id. at 799.  When conduct rather than speech is involved, a statute's overbreadth "must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."  Id. at 799 (quoting Broadrick, 413 U.S. at 615) (internal quotation marks omitted).  Under this standard, for a challenge to be permissible under the overbreadth doctrine, the challenged law "must have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of the identified censorship risks."  City of Lakewood v. Plain Dealer

8

1  Publ'g Co., 486 U.S. 750, 760 (1988); see also Roulette, 97 F.3d at

2  305.

3      Defendant argues that Plaintiff has not shown a realistic

4  danger that the Ordinance will significantly compromise the First

5  Amendment interests of parties not before the Court, because there

6  is no evidence that Computer Gaming and Internet Access Businesses

7  are the only means for people to engage in First Amendment-

8  protected activity like accessing the Internet.  Opp'n at 28.

9  Defendant adds that because Plaintiff charges for its services, the

10 Court should be less inclined to find that Plaintiff's business is

11 protected by the First Amendment.  Id.  Plaintiff responds that it

12 can bring this challenge because it is seeking both to assert its

13 own rights and to challenge the statute's applicability to other

14 parties.  Reply at 3-4.  Plaintiff also states that charging for

15 its services is irrelevant under the First Amendment.  Id.

16     Ordinance No. 13-05 concerns conduct, not expression itself.

17 By its terms, it concerns any "establishment that provides one or

18 more computers or other electronic devices for access to the World

19 Wide Web, Internet, e-mail, video games or computer software

20 programs that operate alone or networked . . . or that function as

21 a client/server program, and which seeks compensation or

22 reimbursement, in any form, from users."  Ordinance No. 13-05 at 5.

23 It states that all such establishments, defined as "Computer Gaming

24 and Internet Access Businesses" in the Ordinance, are summarily

25 prohibited from operating in Hayward, and that all future licenses

26 or permits relating to such businesses are to be denied.  Id.  It

27 also declares these businesses to be nuisances.  Id. at 5-6.

28 Therefore, the conduct in question is -- generally speaking -- the

United States District Court
For the Northern District of California

provision of access to computers and electronic devices for just about any reason whatsoever, in exchange for any type of consideration. See id.

The Court must consider whether this sort of conduct, the only conduct that the Ordinance is designed to impair, "is commonly associated with expression" such that the Ordinance's existence poses a risk to free expression. City of Lakewood, 486 U.S. at 760; Broadrick, 413 U.S. at 615; Roulette, 97 F.3d at 305. The Court finds that it is. The Ordinance is similar to the ordinance addressed in City of Lakewood, 486 U.S. at 760-61, which gave a city's mayor the authority to grant or deny permits for newspaper racks and was found to be directed at expressive conduct. It is less like the ordinance at issue Roulette, 87 F.3d at 305, which banned sitting and lying on public sidewalks under certain conditions and was found not to concern typically expressive conduct. Like the provision of newspaper racks in a city, the provision of access to the Internet and computers is conduct that might not carry a message itself but is nevertheless closely related to expression. The Supreme Court has affirmed that the Internet is subject to the same First Amendment scrutiny as print media, suggesting that providing access to the Internet would be associated with expression:

> This dynamic, multifaceted category of communication includes not only traditional print and news services, but also audio, video, and still images, as well as interactive, real-time dialogue. Through the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox. Through the use of Web pages, mail exploders, and newsgroups, the same individual can become a pamphleteer.

10

**United States District Court**
For the Northern District of California

1
2
3
4

> As the District Court found, "the content on the Internet is as diverse as human thought." We agree with its conclusion that our cases provide no basis for qualifying the level of First Amendment scrutiny that should be applied to this medium.

5  Reno v. ACLU, 521 U.S. 844, 870 (1997); see also Bernstein v. U.S.

6  Dep't of State, 974 F. Supp. 1288, 1305-06, 1308 (N.D. Cal. 1997)

7  (finding encryption software associated with expression).

8      Moreover, Internet access aside, the Ordinance prohibits

9  charging for access to "video games or computer software programs

10 that operate alone or networked," which encompasses a range of

11 activities far beyond the sweepstakes promotions that Plaintiff

12 purports to target here.  Many of these computing activities are

13 obviously associated with expression, like word processing programs

14 and slideshow software.  See Tr. at 53; Ordinance No. 13-05 at 5.

15 The Ordinance excludes "Public Use or Internet Learning Centers"

16 like schools, libraries, and nonprofits from its coverage, but

17 there are no other exceptions or amortizations in the Ordinances.

18 See Ordinance No. 13-05 at 5-6.  The Ordinance therefore sweeps

19 broadly, covering a range of expression-related conduct.

20 Defendant's arguments that the Ordinance was meant to target only

21 sweepstakes providers suggests that it could have been much

22 narrower.

23     Further, operation for profit has no effect on First Amendment

24 protection.  Bookstores, movie theaters, and newsstands all operate

25 for profit and are undisputedly protected under the First

26 Amendment.  Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 501-02

27 (1952).  Moreover, it makes no difference that the conduct here is

28 the provision of access to means of expression, as opposed to the

11

expression itself (or even the consumption of it).  It is enough
that the prohibition targets only conduct commonly associated with
expression.  <u>City of Lakewood</u>, 486 U.S. at 760; <u>Roulette</u>, 97 F.3d
at 305.  The Court finds that the Ordinance is subject to First
Amendment scrutiny.

**a.   Content-Neutral Restrictions on Speech**

     The fact that conduct implicates or is associated with First
Amendment interests does not mean that the government cannot
regulate it.  The question under the First Amendment is whether
restrictions on conduct closely associated with expression are
justified without reference to the content of the regulated speech,
narrowly tailored to serve a significant governmental interest, and
leave open ample alternative channels for communicating the
information.  <u>Ward v. Rock Against Racism</u>, 491 U.S. 781, 790-91
(1989).  Ordinance No. 13-05 is content-neutral, since it applies
regardless of whether (for example) the computer or device in
question is used to operate a sweepstakes promotion or to read a
news article.  <u>See</u> Ordinance No. 13-05 at 5; <u>see also</u> <u>Ward</u>, 491
U.S. at 791-92 (content neutrality is evaluated in reference to
whether the government is targeting specific content).  Therefore
the Court must consider (1) what Defendant's interests are, and
whether they are significant; (2) whether the Ordinance is narrowly
tailored to effect those interests; and (3) whether there are
alternative forums for expression in this case.  <u>See</u> <u>Ward</u>, 491 U.S.
at 791.

**1.   Defendant's Interests**

     Defendant adopted the Ordinances to promote the public health,
safety, and welfare of Hayward by pausing development of certain

12

**United States District Court**
For the Northern District of California

1  types of new businesses, especially those providing sweepstakes,

2  whose legality and effect on Hayward remains undetermined.  See

3  Ordinance No. 13-05 at 1-4; Ordinance No. 13-03 at 1-2.  Defendant

4  also wanted to avoid inviting problems it observed in other cities

5  from arising in Hayward.  Id.  Considerations like these are valid,

6  laudable government objectives, and cities have broad police powers

7  to effect these ends.  See Heffron v. Int'l Soc'y for Krishna

8  Consciousness, Inc., 452 U.S. 640, 649-51 (1981); see also Thain v.

9  City of Palo Alto, 207 Cal. App. 2d 173, 187 (Cal. Ct. App. 1962).

10  Defendant's interest in ensuring that Hayward is home to safe

11  citizens and lawful businesses is significant, and the Court does

12  not find Defendant's reasons pretextual or unsupported by

13  reasonable considerations.

14                     **2.   Narrow Tailoring**

15       However, even though Defendant's interest is substantial, the

16  Ordinance is not narrowly tailored.  Ward, 491 U.S. at 798.  To be

17  "narrowly tailored," an ordinance need not be the least intrusive

18  means of achieving an end.  Id.  But it may not burden

19  "substantially more speech than necessary" to reach that end, and

20  it may not "regulate expression in such a manner that a substantial

21  portion of the burden on speech does not serve to advance [a

22  municipality's] goals."  Id. at 799-800.  Further, if there are

23  numerous and obvious less-burdensome alternatives, those options

24  may factor into a court's consideration of whether the fit between

25  ends and means is reasonable.  See Cincinnati v. Discovery Network,

26  Inc., 507 U.S. 410, 417 n.13 (1993); Project 80's, Inc. v. City of

27  Pocatello, 942 F.2d 635, 638 (9th Cir. 1991).

28

**United States District Court**
For the Northern District of California

1   The Ordinances are too broad.  Defendant's goals may be

2   significant, but its findings in support of the Ordinances point to

3   a far narrower solution than the one it enacted in Ordinance No.

4   13-03 and extended in Ordinance No. 13-05.  If Defendant's goal was

5   essentially to pause development of the rapidly growing subset of

6   Computer Gaming and Internet Access Businesses that provide

7   sweepstakes promotions -- the only such businesses really at issue

8   in this case -- it could have prohibited those specifically.

9   Instead, Defendant has enacted an ordinance that burdens

10  substantially more speech than is necessary by prohibiting any

11  business from allowing any customer to pay to use a computer or

12  electronic device for practically any reason.  Ordinance No. 13-05.

13  As written, the Ordinance burdens substantially more expressive

14  conduct than is relevant to Defendant's stated goals.  Further, it

15  is obvious that many other ways of addressing the problem were

16  available to Defendant, suggesting that the means do not suit the

17  ends in this case.  The Court finds that the Ordinances were not

18  narrowly tailored.

19                    **3.   Alternative Forums**

20      The First Amendment also requires that content-neutral time,

21  place, and manner restrictions leave open ample alternative

22  channels of communication.  <u>Ward</u>, 491 U.S. at 802.  The Court does

23  not find that there are such alternative channels in this case.  If

24  a business wants to provide a computer or device to its customers

25  and charge for its access, it is forbidden to do so.  Ordinance No.

26  13-05.  Schools, libraries, non-profits, and other such

27  institutions can continue to provide computer labs and lend

28  laptops, for example, but no one else is permitted to do the same

1   if they expect compensation or reimbursement.  <u>Id.</u>  This cuts off

2   alternative channels of communication both for businesses that want

3   to provide computer- or Internet-related services for their

4   customers, and for customers who would otherwise have had access to

5   those services.

6              b.    <u>**Conclusion as to Plaintiff's First Amendment**</u>

7                    <u>**Claim**</u>

8        Largely because of the Ordinances' overbroad scope,

9   Plaintiff's facial challenge to the Ordinances succeeds.  The Court

10  finds that Ordinance No. 13-05's "Scope" section, Paragraph 1 of

11  the "Definitions" section, and all of Section 4 are

12  unconstitutional under the First Amendment.  There is no reasonable

13  limiting construction to the terms of the Ordinances: this is not a

14  case of statutory interpretation in which one reading of an

15  ordinance could rescue it from unconstitutionality.  <u>See</u> <u>Broadrick</u>,

16  413 U.S. at 613.

17       However, as Defendant notes, application of the overbreadth

18  doctrine is "strong medicine," and Ordinance No. 13-05 (again, the

19  operative law in this case since it extended Ordinance No. 13-03)

20  includes a severability clause.  Ordinance No. 13-05 at 6 ("If any

21  section, subsection, sentence, clause or phrase of this Ordinance

22  is for any reason held to be invalid or unconstitutional, such

23  decision shall not affect the validity of the remaining portions of

24  this ordinance.").  Such a clause could normally rescue a law even

25  absent a narrowing construction.  <u>See</u> <u>Brockett</u>, 472 U.S. at 506.

26  The problem is that the invalid portions of the Ordinance leave the

27  Ordinance with no meaning at all.  It would cover nothing and do

28  nothing.  Redrafting the Ordinance with a narrower scope -- for

1    example, one seeking to govern the specific type of harmful

2    activity that Defendant's findings and arguments seem to address --

3    could rescue the Ordinance, but the Court will not assume the

4    legislature's role here.  A clearer and fairer result would be for

5    Defendant to amend the Ordinance.

6         The Court finds, as discussed above, that Plaintiff has shown

7    likelihood of success under its First Amendment claim because it

8    has shown that the Ordinance is overbroad.

9         The Court also finds that Plaintiff would suffer irreparable

10   harm to its First Amendment rights absent a preliminary injunction,

11   since the constitutional claim is tightly connected with the

12   deprivation of rights that Plaintiff fears.  Goldies' Bookstore,

13   Inc. v. Super Ct. of Cal., 739 F.2d 466, 472 (9th Cir. 1984) ("An

14   alleged constitutional infringement will often alone constitute

15   irreparable harm.").

16        Accordingly, the balance of equities tips toward Plaintiff

17   here, since Defendant has not shown that it has suffered any harm

18   as a result of Plaintiff's First Amendment-protected activities,

19   while Plaintiff could suffer the loss of its constitutional rights.

20   See id.

21        Finally, the Court finds that issuance of an injunction is in

22   the public interest in this case.  The public interest in upholding

23   First Amendment principles is great; the enforcement of an

24   ordinance that violates the First Amendment would infringe the

25   rights of many members of the public not currently before the

26   Court; and Defendant has shown no harm to itself commensurate with

27   the broad prohibition on expression it has imposed.  See Sammartano

28   v. First Jud. Ct. for Cnty. of Carson City, 303 F.3d 959, 974 (9th

1  Cir. 2002).  Plaintiff has therefore fulfilled all of the <u>Winter</u>

2  factors.  555 U.S. at 20.

3      Therefore the Court GRANTS Plaintiff's motion for a

4  preliminary injunction on First Amendment grounds.  This injunction

5  prohibits Defendant from enforcing the Ordinance to Computer Gaming

6  and Internet Access Businesses, as presently written, against any

7  Computer Gaming and Internet Access Business.  It does not enjoin

8  the enforcement of other laws or regulations.  The Court finds that

9  Plaintiff need not post a bond for this injunction, since

10 maintaining the status quo will not burden Defendant.  <u>See</u>

11 <u>Barahona-Gomez v. Reno</u>, 167 F.3d 1228, 1237 (9th Cir. 1999).

12         **c.   <u>Plaintiff's Request for Injunctive Relief of</u>**

13              **<u>Threatened Summary or Ex Parte Seizures</u>**

14     Plaintiff also requests that the Court enjoin threatened

15 summary or ex parte mass seizures of Plaintiff's computers.  Compl.

16 ¶¶ 76-91.  Specifically, Plaintiff asks for injunctions covering

17 both threatened seizures that would violate the First Amendment,

18 per the discussion above, as well as seizures pursuant to the state

19 summary seizure and gambling laws, Penal Code sections 330a, 330b,

20 331.1, 319, and 335a.

21     Plaintiff bases this request on the cease-and-desist letters

22 it received from Defendant, which state that Defendant will take

23 "any and all legal actions necessary" to prevent Plaintiff from

24 operating its business and sweepstakes promotion, including

25 "seizure and sale of all equipment use to aid, abet, or maintain

26 the nuisance," in reference to the Ordinances' nuisance section.

27 Mot. at 19.  Defendant responds that it has made no threats under

28 Penal Code section 335a ("Section 335a"), which covers the seizure

17

**United States District Court**
For the Northern District of California

1  and destruction of lottery or gambling devices.  Opp'n at 29.

2  Defendant specifies that in referring to seizures and sales in its

3  cease-and-desist letters, it meant only the types of remedies a

4  court might impose upon Plaintiff.  Id.  Defendant does not address

5  Plaintiff's request for an injunction of seizures that would

6  violate the First Amendment, presumably because Defendant contends

7  (as discussed above) that the Ordinance is constitutional.  In its

8  reply, Plaintiff asserts that Defendant's focus on Section 335a is

9  duplicitous, since Defendant's cease-and-desist letters promised

10 that Defendant would use all available remedies.  Reply at 6.

11 Plaintiff therefore asks for a blanket prohibition on all summary

12 or ex parte mass seizures.  Id.

13      First, the Court notes again that in neither this Order nor

14 the Net Connection Order does it make any finding about whether

15 Plaintiff's sweepstakes promotion or any other violates state law.

16 The posture of these cases does not properly raise the issue.

17 However, since Defendant claims that Section 335a is not at issue

18 at this point, the Court will hold it to its word and enjoin

19 Section 335a seizures for the purpose of preserving the status quo

20 until the parties are able to articulate how the Court is to reach

21 the issue of the sweepstakes promotions' legality, or until the

22 parties obtain some other judicial determination of that matter.

23      Second, the Court notes that in accordance with its findings

24 on the First Amendment in Section IV.a-b, supra, the Ordinance is

25 overbroad and cannot be enforced as written.  Accordingly, the

26 Court enjoins Defendant from undertaking any mass seizures under

27 the Ordinance, though as Plaintiff notes, carefully limited

28 seizures that do not deprive customers of computer and Internet

access might not violate the First Amendment.  Compl. ¶ 80.  That narrow allowance may be subject to an adversarial hearing on probable cause, which is not yet an issue before the Court.

Finally, the Court declines to grant Plaintiff's request that the Court enjoin enforcement of the state lottery and slot machine laws, Cal. Pen. Code §§ 330a, 330b, 331.1, 319.  These criminal laws are separate from the Ordinance, and questions of their validity and enforcement are not before the Court at this time.

**V.  CONCLUSION**

As explained above, the Court GRANTS Plaintiff IBiz, LLC's motion for a preliminary injunction on First Amendment grounds, and also enters the limited injunctions concerning seizures as described above.  Plaintiff's other grounds for a preliminary injunction are insufficient as discussed in the Net Connection Order, and to the extent that Plaintiff's motion is based on those claims, it is DENIED.

///
///
///
///
///
///
///
///
///
///
///

*United States District Court*
For the Northern District of California

19

1   Defendant City of Hayward and its agents, servants, employees,

2   and all persons in active concert and participation with them who

3   receive actual notice of this injunction are hereby restrained and

4   enjoined from enforcing City Ordinance No. 13-05, as presently

5   written, against any Computer Gaming and Internet Access Business,

6   and from instituting any summary or ex parte mass seizures of First

7   Amendment-protected material in relation to the Ordinance,

8   including seizures pursuant to California Penal Code section 335a.

9   This injunction does not limit narrow seizures that do not violate

10  the First Amendment, and it does not enjoin the enforcement of

11  state criminal laws, including California Penal Code sections 330a,

12  330b, 331.1, and 319.

13      Plaintiff has the responsibility to serve the injunction in

14  such a manner to make it operative in contempt proceedings.

15

16      IT IS SO ORDERED.

17

18      Dated: July 18, 2013

19                          UNITED STATES DISTRICT JUDGE